# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| DANA CLARK STEVENSON<br>on behalf of a class of others similarly<br>situated | : | DOCKET NO: |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **JURY TRIAL** |
| | : | |
| THE COUNTY OF SALEM,<br>JOHN S. CUZZUPE in his individual<br>and official capacities | : | |
| | : | **CLASS ACTION COMPLAINT** |
| Defendants. | : | |

## INTRODUCTION

1.  This is a class action lawsuit to redress Salem County's deprivation by of rights secured to Mrs. Dana Clark Stevenson and the proposed Class by the federal Constitution, the New Jersey Strip Search statute and New Jersey Constitution. Plaintiff was admitted to the Salem County Jail on non-indictable matters. She was strip searched upon admission. The "strip-search" required Plaintiff to undress in the presence of a complete stranger, deputized through operation of law.

Plaintiff submitted to the unlawful policy and practice of Salem County which upon admission to the jail she was direct to undress, perform to the commands of the Correction Officer who Salem County deputized to conduct unlawful acts under color of state law. The search was highly invasive. Mrs. Dana Clark Stevenson was "demeaned, dehumanized, undignified, humiliated, terrified, embarrassed and repulsed, at Salem County's unlawful forced submission. signifying degradation and degradation."

1

Upon admission, Mrs. Dana Clark Stevenson was directed to answer questions which Salem County purported as a "suicide screen". Yet, the questions were not approved by medical personnel as required under New Jersey law. The questions served to classify at least ten thousand detainees into being housed in a 24 hour lockdown where the detainees were required to wear ill-fitting hardened material with weak Velcro.

Upon admission to the 24 lockdown, Mrs. Dana Clark Stevenson was once again subject to an unlawful "bend and spread" strip search, despite not having an opportunity to obtain contraband. Thereafter she was locked down in a cell with no opportunity to obtain contraband. Yet, Salem County conducted "bend and spread" strip searches at set times throughout the day. These repetitive strip searches with no opportunity to obtain contraband violate the Fourth Amendment requirements of reasonableness as decided by the Third Circuit Court of Appeals to the United States.

Additionally, while in this closed custody unit, Mrs. Dana Clark Stevenson was unlawfully strip searched under a camera which streamed to 20 locations throughout the jail, where senior male officers had access to the monitors to view these strip searches. A male Captain viewed the strip search tapes daily.

On April 6, 2017, Plaintiff filed a federal lawsuit Docket 1:17 cv 02350 (RBK-JS) On May 9, 2017, the federal complaint was voluntarily dismissed. On May 11, 2017, Plaintiff re-filed her Complaint in Salem County, New Jersey.

## PARTIES

2.  Plaintiff Dana Clark-Stevenson ("Ms. Clark-Stevenson") resides in Salem County, New Jersey. She entered Salem County Jail on a failure to pay a fine and other non-indictable offenses. She was strip searched upon admission to the jail in violation of 2A161A-1. She was strip searched upon admission to the "at-risk" unit in violation of the United States Fourth Amendment; New Jersey Constitution Art. 1 ¶7 and; N.J.S.A. 2A:161A-1 et seq.; she was routinely strip-searched after admission to the "at-risk" unit 3 times per day, and anytime she left her cell in the closed custody unit  in violation of the United States Fourth Amendment; New Jersey Constitution Art. 1 ¶7 and; N.J.S.A. 2A:161A-1 et seq.; and; strip searched under a live broadcasting camera in violation of the United States Fourth Amendment; New Jersey Constitution Art. 1 ¶7 and; N.J.S.A. 2A:161A-1 et seq.

3.  Defendant County of Salem (the "County") is a county government organized and existing under the laws of the State of New Jersey.  At all times relevant hereto, the County, acting through the Salem County Correctional Facility and its personnel and the personnel of the County, was responsible for the policies, practices, supervision, implementation and conduct of all matters pertaining to the center and was responsible for the appointment, training, supervision and conduct of all personnel, including those working in the Salem County Correctional Facility.  In addition, at all relevant times, the County was responsible for enforcing the rules of the Correctional Facility and for ensuring that detention personnel obeyed the Constitution and laws of the United States and of the State of New Jersey.

4. John Cuzzupe being sued in his individual and official capacity is the most senior employee/officer/official with ultimate hiring and firing authority and the ability to make policy of the Salem County Jail under the oversight of the Salem County Board of Chosen Freeholders.

## CLASS ACTION ALLEGATIONS

Plaintiff bring this action pursuant to F.R.C.P. 23 on behalf of a class of similarly situated individuals who were detained in the Salem County Correctional Facility.

5. The classes that Plaintiff seeks to represent are defined as:

> All persons who were admitted or will be admitted to the Salem County Jail's closed custody unit, who were routinely strip searched according to Salem County's policy and practice. The Class commences on April 5, 2015and ends when Salem County terminated its policy as defined herein.

> All female detainees who were admitted or will be admitted to Salem County Jail's closed custody unit, and were strip searched in their cell. The Class commences on April 5, 2015 and ends when Salem County terminated its policy as defined herein.

6. This action has been brought and may properly be maintained as a class because Plaintiff satisfies the Numerosity, Commonality, Typicality and Adequacy requirements.

7. The members of the classes are so numerous making joinder impracticable. Upon information and belief, there are thousands of detainees who entered the Salem County Correctional Facility and were admitted to the closed custody unit who were repetitively strip searched at set times throughout the day as well as anytime they took a shower, made a medical visit, made a telephone call, had a video link with the court, had visitation etc. etc. There are at least one thousand documented strip searches of females in their cells

4

which had a camera which covered the entire cell.

8. Upon information and belief, joinder of all of these individuals is impracticable because of the large number of class members and the fact that class members are likely dispersed over a large geographical area. Furthermore, upon information and belief, many members of the class are low-income persons, may not speak English, and likely would have great difficulty in pursuing their rights individually.

9. Common questions of law and fact exist as to all members of the class, including but not limited to:

   a. Did/Does Salem County have a policy and practice to routinely strip search those on the closed custody unit where they lacked access to contraband?

   b. Is it unlawful to repetitively strip search a detainee when they lacked access to contraband?

   c. Did/Does Salem County have a policy and practice to conduct strip searches of female detainees in a cell:

      i.    with a live camera

      ii.   which streamed to 20 locations throughout the jail

      iii.  where males had access to the monitors at these 20 locations throughout the jail

      iv.   which the video was retained on a server

      v.    where a male Captain reviewed this video daily

      vi.   where male and female correction staff had unfettered access to view the video retained on the server

   d. Is it unlawful to conduct strip searches which can be viewed by someone not involved

5

in the strip search?

    e.   Is it unlawful to permit cross-gender viewing of the strip searches;

    f.   Did/Does Salem County have a policy and practice to destroy evidence, particularly the video of females being subject to strip searches.

10. Plaintiff's claims are typical of the claims of the members of the class. Plaintiffs and all members of the class sustained damages arising out of Defendant's course of conduct. The harms suffered by the Plaintiffs are typical of the harms suffered by the class members.

11. The representative Plaintiff has the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the class. Plaintiff has no interests that are adverse to the interests of the members of the class.

12. Plaintiff has retained counsel who has substantial experience and success in the prosecution of class action and civil rights litigation. The named Plaintiffs are being represented by William Riback, Esquire.

13. Plaintiff's Counsel has the resources, expertise and experience to successfully prosecute this action against Salem County. Counsel knows of no conflicts among members of the class, or between counsel and members of the class.

14. This action, in part, seeks declaratory and injunctive relief. As such, Plaintiffs seek class certification under F.R.C.P. 23 (b)(2), in that all class members were subject to the same policies and practices as identified above. In short, Salem County acted on grounds generally applicable to all class members.

15. In addition Plaintiff seeks certification under F.R.C.P. 23 (b)(3).

16. Common questions of law and fact exist as to all members of the class and Predominate over any questions that affect only individual members of the class, as identified above.

17. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all of the individual members of the class is impracticable given the large number of class members and the fact that they are dispersed over a large geographical area. Furthermore, the expense and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them. The cost to the court system of adjudicating thousands of individual cases would be enormous. Individualized litigation would also magnify the delay and expense to all parties and the court system. By contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves the resources of the parties and the court system, and protects the rights of each member of the class.

18. In the alternative to certification under F.R.C.P. 23, Plaintiffs also seek partial certification under F.R.C.P. 23.

## FACTS

### Facts Applicable to the Class Generally

19. The United State Constitution Fourth Amendment, New Jersey Constitution Art. 1 ¶7 and the New Jersey Strip Search Statute 2A:161A-1 et seq prohibit the County from

     a. conducting multiple strip searches of detainees in a closed custody unit.

     b. Conducting strip searches under a camera where third parties can view it and

     c. Retaining video which was subject to cross-gender viewing.

20. Upon information and belief, Salem County had or has instituted a written and/or *de facto* policy, custom or practice of violating detainees rights as identified above.

21. Salem County knows that it was violating the rights of detainees by implementing policies practices or customs as identified above.

7

22. The Defendant's written and/or *de facto* policy, practice and customs have been promulgated, effectuated and/or enforced in bad faith and contrary to clearly established law.

23. Pursuant to this written and/or *de facto* policy, each member of the class, including the named Plaintiff had their rights violated.

24. As a direct and proximate result of the unconstitutional or unlawful acts-- each member of the class, including the named Plaintiff -- has suffered or will suffer psychological pain, humiliation, suffering and mental anguish.

**Facts Applicable to the Named Plaintiff**

## DANA CLARK-STEVENSON

25. On or about December 16, 2016 through December 21, 2016 and again on January 19 through January 24, 2017., Ms. Clark-Stevenson was detained in the Salem County detention facility for missing a municipal court date for a non-indictable matter and failing to pay a municipal fine, respectively. On the two respective detentions Ms. Clark-Stevenson was subject to the same policies practice/customs described below.

26. Despite being brought in on non-indictable matters, and prior to introduction into general population Ms. Clark-Stevenson was subject to a "bend and spread" strip search.

27. Ms. Clark-Stevenson was then unlawfully and unreasonably classified to be housed in a closed custody unit.

8

28. Upon admission to the closed custody unit, Plaintiff was strip searched despite having no access to contraband since her previous strip search upon admission and despite being a non-indictable detainee.

29. Subsequent to admission to the closed custody unit, Plaintiff was repetitively strip searched despite having no opportunity to obtain contraband.

30. Plaintiff was intermittently strip searched in her cell as was the policy and custom, designed to allow males to view the stream and/or the video retained on Salem County's internal server.

31. Each cell in the closed custody unit has a camera.

32. The cameras were live and broadcasting to 20 monitors throughout the facility.

33. A male Captain viewed the strip searches daily.

34. Salem County's male employees had access to the computer monitors where the strip searches were broadcast.

35. Plaintiff was routinely strip searched under a camera.

36. Plaintiff suffered emotional distress, and embarrassment because she was "demeaned, dehumanized, undignified, humiliated, terrified, embarrassed and repulsed".

## CAUSES OF ACTION

### COUNT ONE
**Violation of Article 1  Paragraph Seven of the New Jersey Constitution/N.J.S.A. 2A:161A-1 et seq - Under Color of State Law – Strip Searching Non-Indictable detainees.  Plaintiff's individual claim**

37. Plaintiff incorporate by reference and reallege each and every allegation stated in paragraphs 1 through 36.

38. New Jersey law, N.J.S.A. 2A:161A-1 et seq prohibits strip searching non-indictable detainees admitted into a correctional facility.

39. Article 1 Paragraph 7 of the New Jersey Constitution prohibit strip searching non-indictable detainees admitted into a correctional facility.

40. Salem County is a County Correctional Facility.

41. Salem County implemented a policy/custom/practice to strip search non-indictable detainee upon admission to the jail.

42. This conduct on the part of Defendant represents a violation of the New Jersey Civil Rights Act N.J.S.A. 10:6-2 because the policy and/or custom of strip searching non-indictable detainees was undertaken under color of state law.

43. As a direct and proximate result of the unconstitutional acts described above, Plaintiff has suffered emotional distress damages including but not limited to embarrassment and humiliation

## COUNT TWO

### -- CONDUCT WHICH THERE IS NO PENALOGICAL PURPOSE IN CONDUCTING ROUTINE STRIP SEARCHES OF DETAINEES IN VIOLATION OF THE UNITED STATES CONSTITUTION AMENDMENT FOUR, NEW JERSEY CONSTITUTION ARTICLE ONE PARAGRAPH 7 AND 2a:161A-1 ET SEQ

44. Plaintiff and a class of similarly situated persons incorporate by reference and reallege each and every allegation stated in paragraphs 1 through 43.

45. Admittees to the closed custody unit who were locked down for 24 hours, rights were violated after admission to the closed custody unit because they were routinely strip searched without access to contraband. \

46. There was no legitimate reason for conducting routine strip searches of these detainees and as such were unreasonable under both the United States Constitution; New Jersey Constitution and N.J.S.A. 2A:161A-1 et seq, the latter defining when a detainee can be strip searched upon admission to a closed custody unit.

47. This conduct on the part of Defendant represents a violation of the Federal Civil Rights Act 42 U.S.C.A. 1983, New Jersey Civil Rights Act N.J.S.A. 10:6-2 because the policy and/or custom of routinely strip searching detainees absent penological purpose was undertaken under color of state law.

48. As a direct and proximate result of the unconstitutional acts described above, Plaintiffs have been irreparably injured and have suffered emotional distress damages including but not limited to embarrassment and humiliation.

**COUNT THREE**
**United States Constitution/New Jersey Constitution.**
**Strip Searches under Camera N.J.S.A. 2A:161A-4**

49. Plaintiff incorporate by reference and reallege each and every allegation stated in paragraphs 1 through 48.

50. Plaintiff and a class of similarly situated individuals were strip searched in their cells which was streamed throughout the facility.

51. These detainees were also intermittently strip searched in the shower room where there was no camera, which was only steps from their cells.

52. The stream could be viewed by correction staff including male correction staff.

53. The saved video was viewed by a male Captain.

54. Other employees, predominantly male, had access to view the video retained on the Salem County server.

55. The New Jersey Strip Search Statute, N.J.S.A. 2A:161A-4 prohibits conducting strip searches which can be viewed by persons not conducting the strip searches.

56. Both the federal and New Jersey Constitution prohibit unreasonable searches and ones which are cruel and unusual.

57. This conduct on the part of Defendant represents a violation of the Federal Civil Rights Act 42 U.S.C.A. 1983, New Jersey Civil Rights Act because the policy and/or custom of strip searching under a camera was undertaken under color of state law.

**58.** As a direct and proximate result of the unconstitutional acts described above, Plaintiffs have been irreparably injured and have suffered emotional distress damages including embarrassment and  humiliation.

## COUNT IV
### N.J.L.A.D.

59. Plaintiff incorporate by reference and reallege each and every allegation stated in paragraphs 1 through 58.

60. The New Jersey Law Against Discrimination prohibits discrimination in a place of Public Accommodation.

61. The Salem County Jail is a place of public accommodation.

62. Salem County policy/custom/practice of strip-searching female detainees under a camera which was viewed or could be viewed by male employees violates the Public Accommodation provision of the N.J.LA.D.

63. Plaintiff suffered embarrassment and humiliation as a direct and proximate result of Defendants' violation of the law.

## COUNT V
### FRAUDULENT CONCEALMENT OF EVIDENCE

64. Plaintiffs incorporate the previous paragraphs as if set forth herein at length.

65. Salem County was on notice to save the video evidence by way of an April 7, 2017 retention letter.

116. Plaintiffs sought the video through discovery.

117. Plaintiffs obtained orders for Salem County to produce the CCTV video.

118. On September 5, 2018 Plaintiffs filed for an Order to Show Cause, documenting a one year and five months of Salem County refusing to l to abide by the retention letter and Court Orders.

119. On September 6, 2018 the State court entered the Order to Show Cause.

120. On September 14, 2018 Plaintiffs filed their Reply Brief in Further Support of the Final Order containing a detailed procedural history of non-compliance, including the disregard of court Orders..

121. On December 14, 2018, this Court entered the Final Order.

122. Salem County had ceased its video practice earlier such that no video of strip searches are available on the CCTV footage as Ordered to be produced.

123. Salem County intentionally destroyed the CCTV evidence.

124. As a direct and proximate cause of Salem County's litigation plan:

> A. allowed Salem County to continue its unlawful practice of strip searching detainees under a camera because it decided it would destroy the evidence and deny Plaintiffs the ability to prove their case. and all CCTV cell strip search video evidence was destroyed.
>
> B. it greatly increased the costs of litigation
>
> C. it delayed resolution of the case
>
> D. denied Plaintiffs the opportunity to identify themselves as being video-taped
>
> E. denied Plaintiffs to show evidence of damages

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of others similarly situated, request that this Court grant them the following relief:

An order certifying this action as a class action pursuant to the New Jersey Rules of Court for monetary and/or injunctive relief;

A judgment against Defendant awarding compensatory damages to Plaintiffs and each member of the proposed class in an amount to be determined by a Jury and/or the Court on both an individual and a class wide basis;

A declaratory judgment against Defendant declaring Salem County's policies, practices and customs to be unconstitutional and/or violations of their rights.

A preliminary and permanent injunction enjoining Salem County from continuing the

unconstitutional/illegal policies, practices and customs to be unconstitutional and/or violations of

their rights.

      A monetary award for attorney's fees and the costs of this action.

      An incentive award for the Plaintiffs role as Class Representatives

      Punitive Damages

      All other relief which is just and proper.

## JURY TRIAL

    Plaintiffs demand a jury as to all issues.

Respectfully submitted by:Dated:

   *s/ William Riback 013581994*

WILLIAM RIBACK, LLC
William Riback, Esquire  013581994
1101 N. Kings Highway, Suite 210
Cherry Hill, NJ 08034
856/857-0008

**ATTORNEY FOR PLAINTIFFS AND
PROPOSED CLASS**

# EXHIBIT A

DANA CLARK STEVENSON and
MARK HENDRICKS and
KENNETH FUQUA and
DARIUS SNEAD, individually and
on behalf of a class of others similarly
situated

                  Plaintiffs,

        v.

THE COUNTY OF SALEM,

              Defendant.

: SUPERIOR COURT OF NEW JERSEY
: LAW DIVISION
: SALEM COUNTY
:
:
:      DOCKET NO: SLM 92-17
:
:
:
:
:
:
:
:
:
:
:

# Memorandum in Support of Reconsideration/Clarification of Preliminary Approval

WILLIAM RIBACK, LLC   013581994
William Riback, Esquire
1101 N. Kings Highway
Suite 210
Cherry Hill, NJ 08034
856/857-0008
**ATTORNEYS FOR PLAINTIFFS AND PROPOSED CLASS**

# Table of Contents

INTRODUCTION.................................................................................1

PROCEDURAL HISTORY.....................................................................2

FACTS............................................................................................5

      The dispute between Objectors and Proponents..........................................7

      The Court's March 25, 2022 Order and Opinion
      Granting Preliminary Approval..............................................................8

The Girsch Factors............................................................................9

Factor One complexity, expense and likely duration of
the litigation...................................................................................9

Reaction of the Class.........................................................................9

Stage of the Proceeding.....................................................................10

Risks in Establishing liability, damages and maintaining
the Class through Trial......................................................................10

Ability of the defendant to withstand a greater judgment.......................10

Range of Reasonableness in Light of the Best Possible
Recovery and In Light of the Best Possible Recovery
and in Light of the Attendant Risks of Litigation...............................11

STANDARD OF REVIEW....................................................................11

ARGUMENT....................................................................................12

The Court should reconsider/clarify the Order and Opinion
granting Preliminary Approval to the settlement
because it is unfair and unreasonable..................................................12

The Court should reconsider/clarify the Order
and Opinion because it did not rule on a matter
before it: the three Class Representatives' Objection.....................................12

    The Court should reconsider/clarify the Order
    and Opinion because the finding of an
    "arm-length" settlement is conclusory
    despite probative evidence of collusion...........................................13

    The Court should reconsider/clarify the Order
    and Opinion because the de-certification of
    Classes 2 and 4 is a draconian remedy which
    violates Proponent Class Counsels' RPC 1.16
    duty to the Class...............................................................................15

        The Court should reconsider/clarify its Order
        and Opinion de-certifying Classes 2 and 4
        because the Opinion provides no basis and
        can not provide a legitimate basis for this
        draconian remedy................................................................15

        The Court should reconsider/clarify its Order
        and Opinion de-certifying Classes 2 and 4
        by way of a merits-based decision.........................................16

    The Court should reconsider/clarify its Order and
    Opinion de-certifying Classes 2 and 4 because Salem
    County's argument lacks merit.........................................................16

    The Court should reconsider/clarify the Order and
    Opinion because it did not resolve or discuss the
    apparent conflict between Classes 1 and 3 who are
    compensated to de-certify Class 2 and 4.......................................17

    The Court should reconsider/clarify the Order and Opinion
    because the lack of notice to those with Classes 2 and 4 claims
    fails Due Process..............................................................................18

    The Court should reconsider/clarify the Order and
    Opinion because the Order and Opinion expressed
    "reticence" about Objector Counsel with no basis..............................19

The Court should reconsider/clarify not considering
removal of Proponent Class Counsel………………………………………..20

The Court should reconsider/clarify the Order and
Opinion's Girsch factor analysis because the predicates
are inaccurate……………………………………………………………………..20

The Court should reconsider *Girsch* Factor
One finding that the case is so complex that
the Class should capitulate………………………………………………20

The Court should reconsider/clarify its Order
and Opinion because the Class Representatives'
Objection was not considered……………………………………….......21

The Court should reconsider/clarify its Order
and Opinion  because the risks in establishing
liability and damages were premised on Carl
Poplar's lack of alignment………………………………………………………..22

The Court should reconsider its Order
and Opinion because the risks in
establishing liability and damages
militate against $75.00 for a strip-search
and de-certification of Classes 2 and 4.……………………………………….23

Salem County was confronted with an asymmetrical risk………………………...24

The Court should reconsider its Order
and Opinion because the settlement is
not within a reasonable range given the
best possible recovery and in light of the
risks of litigation.…………………………………………………………………..25

CONCLUSION.……………………………………………………………………26

# Table of Authorities

**Case Law**

*Amgen Inc. v. Connecticut Ret. Plans and Trust Funds,*
133 S. Ct. 1184 (2013).")...............................................................16

*Avila v. Cold Spring Granite Co.,*
1:16-cv-001533-AWI-SKO (E.D. Cal. Jan. 11, 2018) ........................13

*Barkouras v. Hecker,*
No. 06-0366, 2007 WL 4545896 (D.N.J. Dec. 19. 2007) ...................15

*Birmingham Steel Corp. v. Tennessee Valley Auth.,*
353 F.3d 1331 (11th Cir. 2003)......................................................18

*Chiang v. Veneman,*
385 F.3d 256 (3d Cir. 2004)...........................................................15

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974).....................................................................18

*Faber v. Ciox Health, LLC,*
944 F.3d 593 (6th Cir. 2019). ........................................................18

*Garcia v. Vertical Screen, Inc.,*
387 F. Supp.3d 598 (E.D. Pa. 2019).")............................................16

*Gascho v. Global Fitness Holdings,*
LLC, 822 F.3d 269 (6th Cir. 2016) ..................................................13

*Gordon v. Hunt,*
117 F.R.D. 58 (S.D.N.Y. 1987)........................................................15

*Gulino v. Bd. of Educ.,*
907 F. Supp. 2d 492 (S.D.N.Y. 2012) ..............................................15

*Hamid v. Chester Cnty. Hosp.,*
Civil No. 2:19-cv-03773-JMG (E.D. Pa. Dec. 16, 2020)......................16

*In re Hydrogen Peroxide Antitrust Litig.,*
    552 F.3d 305 (3d Cir. 2008)..................................................................15

*In re Inter. Op. Hip Prosthesis Liab. Litigation,*
    204 F.R.D. 330 (N.D. Ohio 2001)..........................................................12

*In re NFL Players' Concussion Injury Litigation,*
    961 F. Supp 2d 708 (E.D. Pa. 2014).......................................................12

*In re Unitedhealth Group Incorporated Pslra Litigation,*
    643 F. Supp. 2d 1094(D. Minn. 2009).....................................................13

*Korrow v. Aaron's Inc.,*
    Civil Action No. 10-6317 (MAS)
    (LHG)(D.N.J. Nov. 30, 2015)................................................................15

*Lachance v. Harrington,*
    965 F. Supp. 630 (E.D. Pa. 1997)..........................................................10

*Mary Beth G. v. City of Chicago,*
    723 F.2d 1263 (7th Cir. 1983)...............................................................24

*Morris County Fair Housing Council v. Boonton Twp,*
    197 N.J. Super. 359 (L.D. 1984).............................................................12

*Muise v. GPU, Inc.,*
    371 N.J. Super. 13 (App. Div. 2004)........................................................15

*Parkell v. Danberg,*
    833 F.3d 313 (3d Cir. 2016) (PA55-56).....................................................20

*Phillips Petroleum v Shutts,*
    472 U.S. 797 (1985).............................................................................18

*Rendine v. Pantzer,*
    (1995)..............................................................................................24

*Rodriguez v. New Tech Co.,*
    No. A-0331-11T1 (App. Div. July 9, 2012).................................................24

*Stougo v Ocean Shore Holding Co.*
    457 N.J. Super. 138 (Ch Div. 2017)..........................................................9

*Walney v. SWEPI LP*,
   CIVIL ACTION No. 13-102 Erie (W.D. Pa. Sep. 14, 2015)…………………………16

*Woe v. Cuomo*,
   729 F.2d 96 (2d Cir. 1984)…………………………………………………………………...15

**New Jersey Statutes**

2A:161A-1(c)…………………………………………………………………………………20

2A:161A-4…………………………………………………………………………………17, 21

**New Jersey Administrative Code**

N.J.A.C. 10A:8.5(b)………………………………………………………………………..20

N.J.A.C. 10A:31-8.4………………………………………………………………………..20

N.J.A.C. 10:31-8.5(b)(3)…………………………………………………………………...20

N.J.A.C. 10:31-13.24………………………………………………………………………20

## INTRODUCTION

Objectors Mr. Mark Hendricks, Mr. Darius Snead and Mr. Kenneth Fuqua bring

this motion for reconsideration/clarification because the Court did not rule on the

Objectors' salient points.  The Opinion apparently disregarded the Objectors' 1,700 page

submission because Darius Snead's two page Certification had handwritten inclusions

and the factual dispute that Mr. Darius Snead and Mr. Kenneth Fuqua was seen to be

incomprehensible. [1]

On March 12, 2020, the Honorable Jean Chetney, J.S.C. certified four classes:

> CLASS ONE:  all non-indictable detainees who entered the Salem County
> Jail and were strip searched.
>
> CLASS TWO:  all detainees who entered the "at-risk" unit and were strip
> searched multiple times
>
> CLASS THREE:  all detainees who were subject to group strip searches
>
> CLASS FOUR:  all detainees who were classified as "at-risk" and were
> strip searched in a cell where it was viewed.

(PA 1,732) (PA1,745-PA1,879)

The Court now gives Preliminary Approval to a settlement where Proponent

Class Counsel agreed to de-certify Classes 2 and 4 absent notice to the Class,

compensated the Class 1 strip searches at $75.00 per strip search and agreed to notice

---

[1] Mrs. Dana Clark Stevenson federal lawsuit also alleges that Proponent Class Counsel
never informed her of the material terms of the settlement.  (Exhibit A)

which will, per the Notice Expert, provide a 5% claims rate. (PA 1 – PA 27) (Exhibit B)

So, it can be assumed the aggregate Class 1 recovery will be approximately $15,000.00[2].

The Objectors' salient points which the Opinion did not consider apparently

because of Mr. Darius Snead's handwritten inclusions were that:

- Proponent Class Counsels' merit based de-certification of Classes 2
  and 4 was procedurally improper because it was a merits based
  decision, was without substantive merit, and violates Class Counsels'
  duty of zealous representation and would terminate clients uniquely in
  Classes 2 and 4 absent notice and so, violates the Court's Fiduciary
  Duty to absent Class members;

- Proponent Class Counsels' agreement to de-certify their Class 1 clients
  who had Class 2 and 4 claims violates Proponent Class Counsels' duty
  of zealous advocacy; duty to communicate the terms of the settlement
  to their clients; violates Due Process and violates the Court's Fiduciary
  Duty to the absent Class members.

- Proponent Class Counsel created a conflict between Classes 1 and 3
  who are compensated to terminate Classes 2 and 4 in violation of the
  Court's duty to assure that no conflicts exist;

- Collusion in the settlement as a consequence of surreptitious
  "discussions" before class certification was decided.

The Objectors also request the Court to reconsider its Order and Opinion in

assessing the *Girsch* Factors because much of the analysis is founded on incorrect

information.

## PROCEDURAL HISTORY

On March 12, 2020, the Honorable Jean Chetney, J.S.C. certified four classes

---

[2] On aggregate, for the Class, that is thirty cents per strip search whereas those settling
at $1,000.00 with a reasonable notice plan would result in $300.00 per strip search.

**CLASS ONE**: All non-indictable detainees admitted to the "at-risk" unit who were strip searched absent reasonable suspicion

**CLASS TWO:** All detainees who were strip searched repetitively in the "at-risk" closed custody unit;

**CLASS THREE:** All detainees who were subject to a group strip search;

**CLASS FOUR:** All detainees who were strip searched in their cells at the "at-risk" unit and observed by a person not authorized to view the search.

(PA 1,732)

On September 1, 2021 Proponent Class Counsel Stephen Barry, Esquire ("Proponent Class Counsel" including Carl Poplar, Esquire) filed the Settlement and Stipulation of De-Certification. (PA1-PA27). On September 23, 2021, Objector Class Counsel William Riback, Esquire ("Objectors") filed an Objection to the Settlement. (PA28-PA289) On October 4, 2021, Mark Hendricks' filed his Certification in Support of the Objection along with a memo on the Representatives' duty to report conflicts. (PA290-PA293) On October 4, 2021, Proponents filed their Motion for Preliminary Approval. (PA294-579) On October 5, 2021, Objectors filed their Letter Brief in Further Support of Objection. (PA580-PA583). On October 6, 2021, Salem County ("Salem County" or "Proponents") filed its Letter Brief in Support of Preliminary Approval. (PA584-PA588) On October 12, 2021, Objectors submitted Darius Snead's Certification in Support of Objection and Letter Brief in Further Support of Objection. (PA590-PA667) On October 15, 2021, Salem County submitted its Letter Brief in Further Support of Preliminary Approval. (PA668-PA699). On October 15, 2021, Proponent Stephen

3

December 20, 2021, Objectors filed their Motion in Support of a Determination that

Salem County Destroyed Evidence.  (PA1,563-PA1,663) On December 29, 2021,

Objectors an unrebutted Letter Brief providing a factual basis as to the many reasons

Proponent Class Counsel are not qualified[3].  (PA1,664-PA1,697)  On March 25, 2022 the

Court filed the following:

- Order Granting Preliminary Approval.  (PA1,699-PA1,720)

- Order Denying Salem County's Request for Sanctions (PA1,721-1,722)

- Order Denying Objectors' Motion for Reconsideration of Dismissal of the Cavity Search Claim (PA1,723-1,724)

- Order Denying Request for Expert Discovery (PA1,725-1,726).

On March 4, 2022, the Court filed its Order Denying a Finding of Spoliation of the

video.  (PA1,727-1,730).

Objectors now file their Motion for Reconsideration/Clarification of the Grant of

Preliminary Approval.

## FACTS

Objectors' Counsel signed the settlement agreement and stipulation of dismissal.

*But,* three days prior to the Settlement papers being submitted to the Court, Objectors'

Counsel objected to the submission of these papers to the Court:

- SALEM PLEASE HOLD OFF ON SENDING THE LETTER TO THE COURT. I WANT TO SPEAK WITH YOU BEFORE SUBMITTING IT.

---

[3] It would defy the tenor of the Opinion to arrive at a reasonable belief that there is any reticence being directed at Proponent Counsel.

Barry Esquire, submitted his Certification in Further Support of Preliminary Approval.

(PA700-PA735). On October 25, 2021, Objectors filed:

- Motion to Strike Improper Request for Sanctions (PA736-PA741)

- Brief in Support of Class Representative Mark Hendricks standing to object (PA742-PA749)

- Objectors' Opposition to Proponents' Motion to Compel Objector Counsel Medical Records (PA750-PA759)

- Objectors' Brief in Further Support of Objection (PA760-PA1169)

- Objectors Opposition to Certification of Proponent Class Counsel Stephen Barry's Esq. Certification  (PA1170-PA1175)

On November 12, 2021, Salem County filed its Brief in Further Support of Preliminary Approval. (PA1,176-PA1,199).  On November 15, 2021, Objectors' filed Opposition to Salem County's Reply.  (PA1,200-PAPA1205) On November 23, 2021, Objectors filed their Motion to Reconsider Dismissal of their Cavity Search claim. (PA1207-PA1299). On November 23, 2021, Salem County filed its Opposition to Reconsideration of the Dismissal of the Cavity Search Claim and to Remove Objector William Riback, Esquire as Class Counsel.  (PA1,300-PA1,301) On November 24, 2021, Proponent Class Counsel Carl Poplar submitted a correspondence arguing the three Objectors were not entitled to counsel.  (PA1,308) On November 26, 2021, Objectors filed their Motion to Permit Expert Report.  (PA1,309-1,390)  On December 10, 2021, Salem County filed  its Brief in Further Support of Preliminary Approval. (PA1,517-PA1,555).  On December 13, 2021, Objectors filed their Opposition to Salem County's brief which was entitled: "Second Omnibus Brief" in Further Support of Preliminary Approval.  (PA1,556-PA1,562) On

4

- August 31, 2021 6:45 p.m. Part of this settlement is a companion agreement to de certify the class. It is never mentioned in the SA or anywhere. That absolutely needs to be in the preliminary approval order. I'm not playing a *shell game*...
- August 31, 2021 6:51 p.m. *"You cant submit the [proposed settlement agreement and stipulation of dismissal] without my approval".*
- August 31, 2021 6:55 p.m. "There are *massive problems* with the proposed order. It's a *snow job* in my view. *Failure to disclose the essential terms* for consideration is *head spinning"*
- September 1, 2021 at 8:24 a.m. I noted that there was a conflict between the classes.

(PA 754).  Without a telephone call, Proponent Class Counsel Stephen Barry[4], Esquire

filed the settlement papers failing to disclose my objection to the Court.  (PA1 – PA27)

Instead of acknowledging my objection to the submission of the settlement

papers with my signature, they attacked with near *ad hominem* attacks seeking to silence

the Objection:

- Stephen Barry, Esquire threatened the Court that if it accepts the merit of the Objection it would create a "difficult situation" (Barry Certification ¶¶34 and 35) (PA 705);

- Stephen Barry, Esquire, absent any basis other than *innuendo* from Carl Poplar, Esquire testified that I was not competent Class Counsel in this case.  (Id. at ¶7)  (Objector Letter Brief of December 29, 2021 at 2) (PA 1,665)

- Salem County argued that I lacked the medical capacity to represent the Objectors.  (Salem County Brief in Further Support of Preliminary Approval at 3-5) PA 1,178 - PA 1,180)

- Carl Poplar, Esquire requested the Court not hear or consider the Objection including at an off-the-record case management conference (PA 1,404 and PA 1,308)

---

[4] Despite the Court's findings otherwise, Stephen Barry, Esquire has zero experience in class actions.

Stephen Barry's Certification testifying that he entered this case because of a dispute between Objectors' Class Counsel and Carl Poplar, Esquire was materially incomplete. (Barry Certification ¶6) I disclosed to Stephen Barry, Esquire, prior to his entry into the case, that I had a well-founded belief that Carl Poplar, Esquire was not aligned with the Class and was working behind my back in the Atlantic County case where we were jointly Class Counsel.

At that point, I sought to move in Mark Kancher, Esquire as ethics counsel into this case, repeatedly voicing concerns about "ethics". (Transcript of Motion on Class Certification, The Honorable Jean S. Chetney, J.S.C. presiding, December 18, 2019 at 249:22, 25, 250:2) (PA 1,869-PA 1,870)

Unbeknownst to the Court and Objector Counsel, at that very time of class certification argument, Proponent Class Counsel Carl Poplar had already engaged in surreptitious discussions with Opposing Counsel. (Objector Letter Brief, December 29, 2021 at 3) (PA, 1,666) Soon thereafter, I became sickened. (Barry Certificaton at 3-4 ¶18) On September 1, 2021, Proponents by way of correspondence submitted the settlement agreement over the objection of Objectors' Counsel. (PA1-PA27).

### *The dispute between Objectors and Proponents*

The dispute arises from the material terms of the Settlement Agreement and Stipulation of De-Certification as well as the formation of that agreement:

> 1. Collusion between Proponent Class Counsel and Salem County e.g. (Objector Letter Brief, December 29, 2021 at 3) (PA, 1,666)

2. The reasonableness of Class 1 compensation of $75.00 for a strip search of a non-indictable detainee (Settlement Agreement p. 12 ¶III(C)(1) (PA413);

3. The reasonableness of Class 1 compensation of $75.00 as compensation for a strip search, multiple strip searches and/or being strip searched under a camera (Joint Stipulation for De-Certification and Voluntary Dismissal of Claims with Prejudice) (PA563-PA568);

4. The reasonableness of Class 1 recovery being in aggregate approximately $15,000.00  (Objection at 38) (PA 68) (Exhibit A) [5]

5. The lack of Notice to Class 1 Class Members that by accepting $75.00 they were foregoing their Class 2 and 4 claims (Id at ¶1(c)-(e)) (PA565-PA566)

6. The termination of those absent class members exclusively in Classes 2 and 4 absent notice or basis (Id at ¶1(c)-(e)) (PA565-PA566)

7. The conflict between Classes 1 and 3 paid to terminate their co-litigant rights who are uniquely in Classes 2 and 4.

8. The Adequacy of Representation (PA1,664-PA1,697)

9. The lack of assent to settle from the Class Representatives  Brief in Further Support of Objection October 25, 2021 Fuqua Certification at 1-2 ¶¶1-8) (PA 787-788) (Snead Certification at 2-3 ¶¶16-23)  (PA791-PA792)

### *The Court's March 25, 2022 Order and Opinion Granting Preliminary Approval.*

On March 25, 2022, the Court filed its Order and Opinion absent consideration of

the Objections of Mr. Mark Hendrick, Mr. Darius Snead and Mr. Kenneth Fuqua,

spanning 1,700 plus pages because Darius Snead's Certification in Support of Objection

had handwritten inclusions.  (Op. at 7 PA 1,715)

---

[5] The $15,000.00 anticipated class recovery is 50% *less* than the aggregated Incentive Awards of $30,000 and the $15,000.00 projected aggregate Class 1 recovery is 2,500% *less* than the approved attorney's fees and costs of $375,000.00 (PA14)

The Court approved the Notice to the Class which did not apprise members of Class 1 that by accepting $75.00 for being strip searched, they were agreeing to relinquish their Class 2 and 4 claims and did not provide notice to those exclusively in Classes 2 and 4 that the Court had extinguished their rights per the agreement of their attorneys (Proponent Class Counsel) with Salem County for no apparent legitimate reason.

## The Girsch Factors

### Factor One complexity, expense and likely duration of the litigation

The Court concluded that expert discovery[6] will be more complex than the Class Representative Objectors claim without explaining why concluding expert discovery in this case would be different from any other case.  (Op. at 6). (PA714)

### Reaction of the Class

"The reaction of the Class is perhaps the most important factor to be weighed in considering the adequacy of the settlement. *Stougo v Ocean Shore Holding Co.* 457 N.J. Super. 138, 160 (Ch Div. 2017).  Yet, the Court inexplicably disregarded the Class Representatives' 1,700 page Objection.

---

[6] The expert opinion is limited to Salem County's "at-risk" classification system and is a boot strap to the unlawfulness of the strip search in the first instance.  Each Class claims the strip searches are unlawful even if the thousands of admittees were suicidal.  The Expert Report belt and suspenders liability by claiming that Salem County's classification system violated N.J.A.C. 10A:31-13.24 (Expert Op. at 8) and the screen is otherwise unreasonable.  (Exhibit C)

**Stage of the Proceeding**

Discovery is complete. (OP. at 6)(PA1,713)

**Risks in Establishing liability, damages and maintaining the Class through Trial.**

The Court relies upon the experience of Counsel in assessing liability, damages and maintaining the Class through Trial. *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997) (Op. at 8). The Opinion found the risks militated in favor of preliminary approval relying on Proponent Class Counsel Carl Poplar's inapt conclusion that the Class had "evidence problems" after he viewed ***"innumerable strip searches"***[7]. (Op. at 8). (PA1,716) The Court also determined that Objectors' class claims were stymied because the Class lacked an expert on ***emotional distress damages.*** (Op. at 8-9) (PA1,716-PA1,717).

**Ability of the defendant to withstand a greater judgment**

The Opinion found that the $10 million in coverage for a governmental entity *may* militate against Preliminary Approval. (Op. at 9) (PA1,717)

---

[7] By Order of the Honorable Jean Chetney, J.S.C. in granting Objector Counsel's OTSC why Salem Should Show Cause why they should not cease destroying evidence, the existent BWC tape is to be saved through the pendency of trial. It is a matter of having someone spend a week or two documenting by time stamp search he views, and testifying to it.

**Range of Reasonableness in Light of the Best Possible Recovery and**
**In Light of the Best Possible Recovery and in Light of the Attendant Risks**
**of Litigation**

The Opinion utilizes a 100% claims rate in evaluating the reasonableness of the

settlement relying exclusively on unpublished and uncited cases which purport to hold

that a fair and reasonable settlement may be found where it is 15% of what could result

at trial.   (Op. at 10). (PA1,718) It is unclear how that equation would work here, absent

the citation of the cases.  The Opinion then decides that Objectors $1,000.00 would be

demand for a non-indictable detainee strip search is unreasonable without applying a

claims rate discout[8]:

> "objectors view of their possible recovery does not appear to comport
> with the reality of the situation.  Objectors believe that all four classes
> should be able to recover at trial.  If we were to take only the two classes
> which remain in the settlement (Classes 1 and 3) and assume each
> member is entitled to $1,000.00 it will exceed the available insurance or
> $10 million by $1 million." (Op. at 11). (PA1,719).  [9]

## STANDARD OF REVIEW

The standard for approval of a class action settlement is "fair and reasonable".

(Id.).  The Court must make a preliminary determination that the proposed settlement

has sufficient apparent merit to justify scheduling a final approval hearing.  (Op. at 3

---

[8] The $1,000.00 per claimant award analysis based upon a survey of at least ten other
similar strip search cases assumes that the Class is comprised of non-indictable
detainees like Class 1.  Objectors believe Class 3 is comprised of indictable detainees
because group strip searches was occurring for those who had kitchen duty, were
leaving the facility, and entering on indictable offenses etc.

[9] There was no objection to the Class 3 recovery because it is believed that it is
substantially comprised of indictable detainees.

11

citing *Morris County Fair Housing Council v. Boonton Twp*, 197 N.J. Super. 359, 369 (L.D.

1984) (PA1,711) The second step requires formal notice approved by the Court to all

members of the class *may* have an interest in the settlement. Preliminary Approval

may not be given to a settlement which has *unduly preferential treatment to segments*

*of the class* [10]or is outside the range of reasonableness[11]. (Id. at 3 citing *In re NFL*

*Players' Concussion Injury Litigation*, 961 F. Supp 2d 708, 714 (E.D. Pa. 2014). (PA1,711)

The review on preliminary approval is not supposed to be a *rubber stamp*. *In re Inter.*

*Op. Hip Prosthesis Liab. Litigation*, 204 F.R.D. 330, 338 (N.D. Ohio 2001) (Op. at 4). (Op.

at 4-5) (emphasis added). (PA1,712-PA1,713)


## ARGUMENT

**The Court should reconsider/clarify the Order and Opinion granting Preliminary Approval because the  settlement is unfair and unreasonable, rife with conflicts, and denies access to the courts.**

> *The Court should reconsider/clarify the Order and Opinion because it did not rule on a matter before it: the three Class Representatives' Objection.*

It is submitted that by ignoring the Objection, it appears that the Opinion

"rubber stamped" the settlement.  Darius Snead's handwritten entries on his

Certification should not be a reason for ignoring the Certification nor the 1,700 pages

which go along with it. At oral argument., there was no query or colloquy on this.

---

[10] It is submitted that having Classes 1 and 3 paid to terminate Classes 2 and 4 qualified as unduly preferential treatment.

Yet, a court must give close scrutiny to a Class Representative's Objection because they were appointed to protect the interests of the Class. *In re Unitedhealth Group Incorporated Pslra Litigation*, 643 F. Supp. 2d 1094, 10 (D. Minn. 2009) ("As fiduciary to the class , the Court carefully considers class member objections .") *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 294 (6th Cir. 2016) ("Objections raised by members of the plaintiff class should be carefully considered.") *Avila v. Cold Spring Granite Co.*, 1:16-cv-001533-AWI-SKO, at *12 (E.D. Cal. Jan. 11, 2018) ("the Court should consider any support or opposition to the settlement by a class representative. *See* Manual Complex Lit. § 21.642 (4th ed. 2016). ")  The unconsidered objections are:

1.  De-certification of Classes 2 and 4  (PA59, 581, PA761, PA1,200, PA1,202-PA1,203, PA1,557)

2.  Conflict between Classes 1 and 3 paid to dismiss Classes 2 and 4 (PA59, PA581, PA590, PA761, PA1,557)

3.  Lack of Notice to the Class that they are dismissing Class 2 and 4 claims in exchange for Class 1 ($75.00) and/ or Class 3 ($300.00) recovery (PA59, 581, PA761, PA1,201   PA1,557)

4.  Lack of notice to the Class that their rights in their claims and lawsuit are being terminated (PA59, PA581, PA761, PA1,201, PA1,557)

5.  Collusion (below)

## **The Court should reconsider/clarify the Order and Opinion because the finding of an "arm-length" settlement did not consider the Objection.**

The Objection provided probative evidence of collusion:

- Stephen Barry, Esquire entered this case because Objector Counsel had a belief Carl Poplar, Esquire interests were not aligned with the Class; compare (Barry Cert. at 2 ¶6) (PA 701) with (Transcript of Motion on Class Certification, The Honorable Jean S. Chetney, J.S.C. presiding, December 18, 2019 at 249:22, 25, 250:2) (PA 1,869-PA 1,870)

- Consistent with Objector Counsel's firmly held belief that Proponent Counsel Carl Poplar was not aligned with the interests of the Class: Proponent Counsel Carl Poplar initiated "*discussions*" during the pendency of class certification briefing; (Objector Letter Brief, December 29, 2021 at 3) (PA, 1,666)  (Barry Certification at p. 4¶19)

- Proponent Counsel Carl Poplar told Objector Counsel to his face that he did "too well" getting the four classes certified; (Id.)

- Proponent Counsel Carl Poplar stipulated to the de-certification of his clients exclusively in Classes 2 and 4;

- Proponent Counsel Carl Poplar failed to notice his Class 1 clients that by agreeing to $75.00 that they are foregoing their Class 2 and 4 claims;

- Proponent Counsel Carl Poplar stipulated to the de-certification of Classes 2 and 4 absent notice to his clients that he had decided to terminate them out of the litigation without a legitimate basis;

- Proponent Counsel Carl Poplar agreed that $75.00 was fair compensation for being strip searched;

The Court should reconsider its Order and Opinion because the Court left unresolved specter of collusion by disregarding the Objection.

14

## The Court should reconsider/clarify the Order and Opinion because the de-certification of Classes 2 and 4 is a draconian remedy which violates Proponent Class Counsels' RPC 1.16 duty to the Class.

**The Court should reconsider/clarify its Order and Opinion decertifying Classes 2 and 4 because the Opinion provides no basis and can not provide a legitimate basis for this draconian remedy.**

Decertification is an "'extreme step' particularly at a late stage in litigation, 'where a potentially proper class exists and can easily be created." *Gulino v. Bd. of Educ.*, 907 F. Supp. 2d 492, 504 (S.D.N.Y. 2012) (quoting *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)); *see also Chiang v. Veneman*, 385 F.3d 256, 268 (3d Cir. 2004) (characterizing decertification as a "drastic course"), *abrogated on other grounds by In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 318 n.18 (3d Cir. 2008). Thus, "[t]he party seeking to decertify a class action has the burden of showing 'changed circumstances' that would warrant the decertification of the class action." *Barkouras v. Hecker*, No. 06-0366, 2007 WL 4545896, at *1 (D.N.J. Dec. 19, 2007) (quoting *Muise v. GPU, Inc.*, 371 N.J. Super. 13, 32 (App. Div. 2004)); *see also Gulino*, 907 F. Supp. 2d at 504 ("A defendant seeking to decertify a class 'bears a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class.'") (quoting *Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987)).

*Korrow v. Aaron's Inc.*, Civil Action No. 10-6317 (MAS) (LHG), at *20-21 (D.N.J. Nov. 30, 2015). Here, there has been no change in circumstances since the Honorable Jean Chetney's Order certifying Classes 1-4[12]. The Order and Opinion offers no basis for decertifying Classes of 2 and 4. There is no case, published or unpublished, where Class Counsel stipulates to de-certification because it is unethical. (See e.g. Transcript of Motion on Class Certification at 56:17-57:8 (PA 1,772 – PA 1,773)) (class members will

---

[12] There was no new discovery. The basis for de-certification apparently had nothing to do with R. 4:32.

not be able to vindicate their rights because it is a negative recovery case in relation to attorney's fees).

### The Court should reconsider/clarify its Order and Opinion de-certifying Classes 2 and 4 by way of a merits-based decision.

The Court's silent de-certification of Classes 2 and 4 is impliedly on the the merits. (Salem County's Brief in Support of Preliminary Approval, October 15, 2021 at 7-13) (PA 674 -PA 680)  (November 12, 2021 Brief at 11.  (PA 1186) A merit-based decision on class certification is improper.  *Walney v. SWEPI LP*, CIVIL ACTION No. 13-102 Erie, at *12 (W.D. Pa. Sep. 14, 2015) ("In making a class certification ruling, the court has "no license to engage in free-ranging merits inquiries." *Amgen Inc. v. Connecticut Ret. Plans and Trust Funds*, (2013).") *Hamid v. Chester Cnty. Hosp.*, Civil No. 2:19-cv-03773-JMG, at *2 (E.D. Pa. Dec. 16, 2020) ("the Court does not evaluate the merits of a case when ruling on a motion for conditional certification . *Garcia v. Vertical Screen, Inc.*, 387 F. Supp.3d 598, 604 (E.D. Pa. 2019)."). The Order and Opinion silently de-certifying Classes 2 and 4 apparently based upon Salem County's inapt view of the merits is improper.

### The Court should reconsider/clarify its Order and Opinion de-certifying Classes 2 and 4 because Salem County's argument lacks merit.

It is undisputed that Salem County had a policy and practice to conduct repetitive strip searches upon detainees admitted into the "at-risk" unit or what is known as a "closed custody unit.".  Brief in Support of Objection October 25, 20212 at 7-12) (PA771-PA772)  Salem County offered no legitimate argument countering the

16

plethora of authority that repetitive strip searches when the detainee/inmate has no opportunity to obtain contraband.

It is undisputed that Salem County had a policy and practice to document strip-searches of females in their cells which had an active camera streaming to 20 locations throughout the jail where a male Captain viewed the saved CCTV feed and males otherwise had unfettered access. (PA771-PA772)  There was a shower room on the closed custody unit which had no camera. Id. Class 4 presented two merits arguments against de-certification:

1. It is unreasonable to strip search under a camera when there is a less intrusive place to conduct the search;

2. The search on a streaming camera where others not involved in the search who can view it violates 2A:161A-4

The Order and Opinion offers no basis to de-certify Classes 2 and 4.

## The Court should reconsider/clarify the Order and Opinion because it did not resolve or discuss the apparent conflict between Classes 1 and 3 who are compensated to de-certify Class 2 and 4.

The Class Representatives have a duty to report conflicts. (Letter Brief October 12, 2021 at 1-2) (PA 590-PA591)   The Court has a duty to resolve any conflict. The apparent conflict between Classes 1 and 3 who are compensated in exchange for de-certifying Classes 2 and 4  remains unresolved.  Id. The Court should reconsider its Order and Opinion because the Preliminary Approval Order gives its imprimatur to a conflict..

17

## **The Court should reconsider/clarify the Order and Opinion because the lack of notice to those with Classes 2 and 4 claims fails Due Process.**

Notice is required to anyone effected by a class action settlement under R.

4:32-1(b)(3). R. 4:32-2(e)(1)(B); F.R.C.P. 23(c)(2) and *Eisen v. Carlisle & Jacquelin,* 417 U.S.

156, 176 (1974) ("[I]ndividual notice to identifiable class members is not a discretionary

consideration to be waived in a particular case."). *Faber v. Ciox Health, LLC,* 944 F.3d 593,

602 (6th Cir. 2019). Mandatory notice pursuant to subdivision (c)(2) is designed to fulfill

requirements of due process. Eisen at 173-74

De-certification requires notice.

> The Seventh Circuit nevertheless held that the district court's failure to notify the class of its decertification order was error that required a remand to allow the district court to correct its omission. *Id.* at 913-15. Citing Rule 23(e), which requires that class members be notified of the proposed dismissal or compromise of an action, the panel noted that although a primary purpose behind this requirement is to protect the class against a proposed settlement agreement in which the class counsel may be *"selling out the class,"* another important purpose is to alert the class that the statute of limitations for any individual claims, which was tolled upon the motion for class certification, will begin running again upon the dismissal of the action; absent such notification, members of the class might "find themselves time barred without knowing it." *Id.* at 914.

*Birmingham Steel v. Tennessee Valley Auth,* 353 F.3d 1331, 1338-39 (11th Cir. 2003)

(emphasis added) *Wit v. United Behavioral Health,* No. 14-cv-02346-JCS, at *9 (N.D. Cal.

Nov. 3, 2020) (same)

Further, notice must be full descriptive. *Phillips Petroleum v Shutts,* 472 U.S. 797,

812 (1985). The Notice here is misleading. The Notice being sent to Class 1 violates Due

Process because the Notice advises that they can receive $75.00 for their Class 1 claim but fails to advise them that by doing so they are foregoing their Class 2 and 4 claims. The Notice also fails to apprise the absent class members of the Objection as raised by the Class Representatives.

The Court should reconsider its Order and Opinion because the Notice should be seen as violating Due Process which should prohibit a finding that this settlement has sufficient apparent merit to justify scheduling a final approval hearing.

### The Court should reconsider/clarify the Order and Opinion because the Order and Opinion expressed "reticence" about Objector Counsel with no basis.

Salem County sought removal of Objector Class Representatives' Counsel because, it claimed that as a result of the Objection, he is not working in the best interests of the Class. (Salem County Correspondence November 23 (PA 1,300-01. The Court apparently made contradictory findings. On the one hand, the Court found the Objection was in good faith in response to Salem County's requested sanctions. (Order Denying Request for Sanctions. (PA1,721 – PA 1,722). On the other hand, the Court invites Proponent Class Counsel to seek removal of Objector Class Counsel based upon its reticent opinions[13] of Objector Class Counsel. (Order Granting Preliminary Approval at 12) (PA 1,720).

---

[13] Although the Opinion couches the invitation to remove Class Counsel in neutral terms, from the tenor of the Opinion. It can only be directed at one Class Counsel.

### The Court should reconsider/clarify not considering removal of Proponent Class Counsel.

For all of the reasons submitted in Objectors correspondence of December 29,

2021, the Court should reconsider/clarify its Opinion retaining Proponent Class

Counsel.

### *The Court should reconsider/clarify the Order and Opinion's Girsch factor analysis because the predicates are inaccurate.*

#### The Court should reconsider *Girsch* Factor One finding that the case is so complex that the Class should capitulate.

The Court determined that the case is more complex than Objectors claim. (Op.

at 6) (PA 1,714)  Objectors submit that this is not the case:

> **CLASS ONE:  Salem County's policy and practice is admitted:.  Non-indictable detainees were strip searched upon admission to the "at-risk" unit and the jail absent an approved medical test.  The strip searches and the reason for the strip search are documented. The case is governed by 2A:161A-1(c); N.J.A.C. 10A:8.5(b); N.J.A.C. 10A:31-8.4 and N.J.A.C. 10:31-13.24. Objection 25-26) (PA55). It is a binary choice on undisputed facts.**

> **CLASS TWO:  Salem County's policy and practice is admitted: Salem County had/has a policy and practice to strip search "at-risk" detainees multiple times per day in a closed custody unit with a 24/7 lockdown. As to non-indictable detainees in the class, the above Class One analysis should still hold.  For indictable detainees the multiple strip searches in a closed custody unit is governed under N.J.A.C. 10:31-8.5(b)(3) "before" language" and the string of Fourth Amendment cases on point. E.g. *Parkell v. Danberg,* 833 F.3d 313, 326 n. 8, 329-30 (3d Cir. 2016) (PA55-56).  It is a binary choice on undisputed facts.**

CLASS THREE: Salem County's policy and practice is admitted: strip searching detainees in the presence of other detainees and COs who were not involved in conducting the search and could view it. This claim is governed by 2A:161A-4. There is nothing in the appendix relating to Class 3 as is submitted below.

CLASS FOUR: Salem County's policy and practice is admitted or documented: Female detainees were strip searched in their cells as per the exemplar submitted at PA245. The cells had cameras. (PA56-PA57) The cameras were operational. (Id.) The cameras live streamed to 20 monitors throughout the facility. (Id.) The video was saved for a period where a male Captain took County time to view these each day. This claim is governed by 2A:161A-4 ; the Fourth Amendment and Art. 1 ¶7. On summary judgment there are a few boxes to check, which Objectors believe Salem County has accomplished. So, if true, it is a binary choice.

## The Court should reconsider/clarify its Order and Opinion because the Class Representatives' Objection was not considered.

All four of the Class Representatives appointed by the Court to safeguard the interests of the Class oppose the settlement as set forth in the submission per the Appendix. The Opinion discredits Mr. Darius Snead and the Objection by apparently questioning its authenticity:

> The Court takes note that two members of the class *claim* to have presented objections (Mr. Snead and Mr. Hendricks) [14] In Mr. Snead's certification, he claims to have never been explained the terms of the settlement agreement. (sic) The proponent's counsel at oral argument rather claimed to have explained the terms of the settlement agreement. The certification is a combination of preprinted text along with handwritten objections. *It is unclear to the court what Mr. Snead's actual position is given the conflicting information.*

---

[14] The Court was unaware that there were three Class Representatives who joined the Objection missing Mr. Kenneth Fuqua for whom Stephen Barry, Esquire revealed what was apparently a client confidence to the Court in an off-the-record case management conference.

(Op. at 7). (emphasis added).  This passage in the Opinion is seemingly the basis for not considering the 1,700-page Objection.

Mr. Darius Snead's certification is not ambiguous nor did he provide conflicting information. (PA 593 – PA 594) As Class Representative, Mr. Darius Snead testified that he was not advised of the terms of the settlement, he was merely told by Proponent Class Counsel he was to receive $7,500.00 as the Incentive Award, and that he found $75.00 as compensation "insulting". (PA787-PA795)  Darius Snead's testimony is common to all four Class Representatives.

## The Court should reconsider/clarify its Order and Opinion because the risks in establishing liability and damages were premised on Carl Poplar's lack of alignment.

The Court's determination that the risk of proving liability militates in favor of preliminary approval relies exclusively on the inapt representation of Proponent Class Counsel Carl  Poplar

> *I viewed the tapes of  innumerable strip searches.*  We had proof problems, Your Honor.   We had certain statements by class representatives but reviewing the tapes we had significant proof problems.

(Preliminary Approval Transcript at 46:2-16 (PA 1925)    That statement is obviously nonsensical in its contradiction.  Carl Poplar's proffer admits he witnessed "*innumerable*" strip searches which were captured on video from Salem County's BWC

system. The Honorable Jean Chetney's Final Order on Objector's OTSC requires the video be maintained through the pendency of this litigation[15].

The testimony, the strip search forms and class list tell the story of who was strip searched, the reason for the strip search, the time of the strip search, where the strip search occurred, who was present and the detaining charge which is sufficient for liability under Classes 1-3. Salem County has admitted that "at-risk" cells were monitored 24/7 with cameras broadcasting to 20 monitors throughout the facility which the male Captain viewed every day. (Objector Brief October 25, 2021 at 5-12) (PA769 - PA776).

### The Court should reconsider its Order and Opinion because the risks in establishing liability and damages militate against $75.00 for a strip-search and de-certification of Classes 2 and 4.

**Objectors have no risk in proving emotional distress damages.**

There is simply no damage-causation issue which makes clear that there is no risk in establishing damages. Salem County's strip search policy and practice consists of the victims being directed by a law enforcement officer to

- Undress in the presence of a complete stranger;

- run their fingers through hair;

- open her mouth;

---

[15] Objectors preceding trial could have a third party spend two weeks documenting what is observed with time stamps. Dubious Plaintiffs would want to risk turning off the jury by showing them repulsive and redundant video.

- lift their arms,

- lift their the ball sack/ breasts,

- turn around

- lift their feet

- bend over exposing the vagina and anus

- and expose the vagina and anus

The law makes no bones about it: strip-searches are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission" *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983). The Order and Opinion held that the damages would not be able to be proven, because discovery having closed, they have no expert to prove emotional distress damages. (Op. at 9) Yet, no expert is needed to prove emotional distress damages. "Expert testimony or other independent corroborative evidence is not necessary to support an award of emotional distress damages. *Rendine v. Pantzer*, (1995)." *Rodriguez v. New Tech Co.*, No. A-0331-11T1, at *4 (App. Div. July 9, 2012).

### Salem County was confronted with an asymmetrical risk.

Further, the Opinion misconstrues Objectors' argument that on an unliquidated damage claim it is anyone's guess what a jury may do. (Op. at 8-9) This means on the one hand, that the Class would be confronted with relinquishing $75.00 for a jury determination. On the other hand, Salem County is risking the $10 million insurance policy according to the Court's conservative math arriving at an $11 million

24

judgment. (Op. at 10) (PA 1,718) Put another way, Class 1 would be risking the projected $15,000.00 settlement against an eight-figure jury award. (Id.)

> ### *The Court should reconsider its Order and Opinion because the settlement is not within a reasonable range given the best possible recovery and in light of the risks of litigation.*

The Court recognizes that the mean average settlement is predicated on a $1,000.00 per claimant award. (Op. at 10). Yet, the Opinion rejected the mean average because, relying on unpublished and uncited cases, it found that a settlement even at 15% of total exposure could be reasonable. (Id.). But the Opinion offers nothing in the way of what 4,500 individuals could obtain from a jury for being subject to being strip searched as described above. The Court simply concludes: "This settlement falls within that same range"[16].

The Opinion then provided a mathematical formula to hold that Objectors' Counsel has no idea what he is doing because based upon $1,000.00 per claimant his settlement demand would eclipse the policy limits. Yet, the Opinion's formula is based upon a 100% claims rate:

CLASS 1 $75.00 per claimant x 4,500 Class Members =        $337,500

CLASS THREE $300.00 per claimant x 6,500 class members =        $1,950,000.00

---

[16] Assuming a 5% claims rate, per the Notice Expert, the settlement value is $15,000.00. That would mean that a jury could only return $100,000.00 for 4,500 strip searches, although elsewhere in the Opinion, the Court applied a 100% claims rate and arrived at $11 million. (below) There is nothing to say that a jury could return a class verdict of between $5,000.00 to $10,000.00 per strip search which is the reason the mean average of settlements of strip searches is $1,000.00 per claimant.

AGGREGATED CLASS DAMAGES                                    $2,287,500.

The Court then did a 100% claims rate analysis based upon Objectors' well founded

$1,000.00 per claimant mean average arriving at $11 million which exceeds the

coverage. (Op. at 11) (PA1,719) But applying a discounted claims rate arrives at Class 1

valuation below 1.25 million.

Objectors did not oppose Class 3 recovery because Objectors believe it is

substantially comprised of indictable detainees where no historical record of

settlements exist. Applying a reasonable claims rate discount arrives at much much less

than $1 million. A legitimate analysis of actual settlement value is far less than

$2,287,500 which the Court found to be reasonable.

Finally, the Opinion finds the settlement of $300.00 to Class 3 as being

within the range of reasonableness. (Op. at 11) (PA1,719) But, the Opinion does not

address how a 400% deflator on $300.00 or $75.00 would be reasonable.

## CONCLUSION

For all of the above reasons, the Court is asked to clarify and/or reconsider the

Order granting Preliminary Approval.


Dated: April 13, 2022                    _s/ William Riback 0135819994_

# EXHIBIT B

STEPHEN W. BARRY, ESQUIRE
Attorney ID # 021311976
BARRY, CORRADO & GRASSI, P.C.
2700 Pacific Avenue
Wildwood, New Jersey 08260
(P) (609) 729-1333 (F) (609) 522-4927
sbarry@capelegal.com
Attorneys for Plaintiffs

| DANA CLARK STEVENSON; MARK HENDRICKS, KENNETH FUQUA; AND DARIUS SNEAD, <br> Plaintiffs, <br> v. <br><br> THE COUNTY OF SALEM, <br> Defendant. | SUPERIOR COURT OF NEW JERSEY <br> SALEM COUNTY – **LAW DIVISION** <br> DOCKET NO.: SLM-L-92-17 <br><br> CIVIL ACTION <br><br> **ORDER PRELIMINARILY APPROVING SETTLEMENT** |
| --- | --- |

THIS MATTER, having come before the Court on the

Plaintiffs' Motion for Approval of the Settlement Agreement; and

the parties having filed the Settlement Agreement attached as

Exhibit G to the Motion for Approval of the Settlement Agreement

in satisfaction of Rule 4:32-(e) of the New Jersey Rules of

Civil Procedure; and the Court having reviewed and considered

the terms and conditions of the proposed settlement as set forth

in the Settlement Agreement; and the Court finding it has

subject matter jurisdiction over this matter; and for good cause

appearing that the terms and conditions set forth in the

Settlement Agreement were the result of good faith, arm's length

settlement negotiations between competent and experienced

counsel for both Plaintiffs and Defendants:

1

PA001699

IT IS HEREBY ORDERED on March 25, 2022 AS FOLLOWS:

1. Capitalized terms used in this Order have the meanings assigned to them in the Settlement Agreement and this Order.

2. The terms of the Parties' Settlement Agreement are hereby conditionally approved, subject to further consideration thereof at the Final Approval Hearing provided for below. The Court finds that said settlement is sufficiently within the range of reasonableness and that notice of the proposed settlement should be given as provided in this Order.

3. Pursuant to New Jersey Court Rule 4:32, pending final approval by this Court of the Settlement Agreement, the Court certifies the following Class Members for the Class known as the Over-Identification Class:

> Non-indictable detainees classified as at-risk who were strip-searched based on their identification as at-risk inmates and absent reasonable suspicion in violation of N.J.S.A. 2A:16aA-a(c). The Class Period commences on April 6, 2015 and closes on December 1, 2020.

4. Pursuant to New Jersey Court Rule 4:32, pending final approval by this Court of the Settlement Agreement, the Court certifies the following Class Members for the Class known as the Group Strip Search Class:

> Detainees who were strip-searched in the view of others in a group strip search. The Class Period commences on April 6, 2015 and closes on December 1, 2020.

2

PA001700

5. Pending final approval by this Court of the Settlement Agreement, the Court finds that Plaintiffs, Dana Clark Stevenson, Mark Hendricks, Kenneth Fuqua, and Darius Snead, adequate Class Representatives for the Class Over Identification Class and Group Strip Search Class.

6. The Court finds the terms of the settlement sufficient to give Notice to the Class.

7. The Court finds that the requisites for a class are met for the same reasons as set forth in the Court's order of March 12, 2020.

8. Pending final approval by this Court of the Settlement Agreement, the Court further finds that the following attorneys are designated as Class Counsel:

> Stephen Barry, Esquire
> Barry, Corrado & Grassi P.C.
> 2700 Pacific A venue
> Wildwood, NJ 08260

> Carl Poplar, Esquire
> 1010 Kings Highway S., Building One
> Cherry Hill, NJ 08034

> William Riback, Esquire
> William Riback, LLC
> 1101 North Kings Highway, Suite 210
> Cherry Hill, NJ 08034

9. The Court approves the Class Notices of Settlement for the Over-Identification Class and Group Strip Search Class attached hereto collectively as Exhibit H and the Summary

3

Notice for Publication attached hereto as Exhibit I. The
Court also approves the Notice Program as set forth in
Section IV of the Settlement Agreement.

10. If the Settlement Agreement is terminated or not
consummated for any reason whatsoever, the Parties reserve
all of their rights, including the right to continue with
the litigation pending at the time of the settlement should
the Settlement Agreement not be consummated.

11. Beginning no later than thirty (30) days from the date of
this Order Preliminarily Approving Settlement (the
commencement of which shall constitute the "Notice Date"),
the Settlement Administrator shall cause to be disseminated
the notices, substantially in the form attached as Exhibits
H and I hereto, in the manner set forth in Section IV of the
Settlement Agreement. Such Notice Program will be completed
expeditiously pursuant to the terms of the Settlement
Agreement. Class Members will have sixty (60) days from the
Notice Date to opt out or to object, and one hundred and
twenty (120) days from the Notice Date to submit a Claim
Form. Ten (10) days prior to the Final Approval Hearing,
Claims Administrator shall serve and file a sworn statement
attesting to compliance with the provisions of this
paragraph.

4

12. The notice to be provided as set forth in the Settlement
    Agreement as filed with the Court is hereby found to be the
    best practicable means of providing notice under the
    circumstances and, when completed, shall constitute due and
    sufficient notice of the proposed settlement and the Final
    Approval Hearing to all persons and entities affected by
    and/or entitled to participate in the settlement, in full
    compliance with the notice requirements of New Jersey Court
    Rule 4:32, due process, the Constitution of the State of
    New Jersey, the laws of New Jersey and all other applicable
    laws. The Notices are accurate, objective, informative and
    provide Class Members with all of the information necessary
    to make an informed decision regarding their participation
    in the Settlement and its fairness.

13. The Parties are authorized to retain Rust Consulting, an
    Exela Technologies Brand, as the Settlement Administrator
    in accordance with the terms of the Settlement Agreement
    and this Order.

*Requests for Exclusion from the Settlement Class*

14. Any member of the Settlement Class that wishes to be
    excluded ("opt out") from the Class must send a written
    Request for Exclusion to the Claims Administrator, so that
    it is received by the Claims Administrator at the address

5

indicated in the Notice on or before the close of the Opt
Out Deadline. The Request for Exclusion shall fully comply
with the requirements set forth in the Settlement
Agreement. Members of the Class may not exclude themselves
by filing Requests for Exclusion as a group or class, but
must in each instance individually and personally execute a
Request for Exclusion and timely transmit it to the Claims
Administrator.

15. Any Class Member who does not properly and timely request
exclusion from the Class shall be bound by all the terms
and provisions of the Settlement Agreement, whether or not
such person objected to the Settlement and whether or not
such person submits a Claim Form, or participated in, the
Settlement Fund pursuant to the Settlement Agreement.

*The Final Approval Hearing*

16. A hearing on final settlement approval (the "Final Approval
Hearing") is hereby scheduled to be held before this Court
on September 22, 2022 at 1:30 p.m., to consider the
fairness, the reasonableness, and adequacy of the proposed
settlement, the dismissal with prejudice of this class
action with respect to the Released Parties that is the
Defendants herein, and the entry of final judgment in this
class action. Class Counsel's application for award of

6

attorneys' fees, expenses, and costs shall be heard at the
time of the Final Approval Hearing.

17. The date and time of the Final Approval Hearing shall be
set forth in the Notice, but the Final Approval Hearing
shall be subject to adjournment by the Court without
further notice to the members of the Settlement Class other
than that which may be posted by the Court. The Claims
Administrator will advise members of the settlement class
of any scheduling issues by way of the Settlement Website.

18. Any person or entity that does not elect to be excluded
from the Class may, but need not, enter an appearance
through his or her own attorney. Class Members who do not
enter an appearance through their own attorneys will be
represented by Class Counsel.

19. Any person who does not elect to be excluded from the Class
may, but need not, submit comments or objections to the
proposed Settlement. Any Class Member may object to the
proposed Settlement, entry of Final Order and Judgment
approving the Settlement, and Class Counsel's application
for fees and expenses by serving a written objection.

20. Any Class Member making the objection (an "objector") must
sign the objection personally. An objection must state why
the objector objects to the proposed Settlement and provide
the basis to support such position. If an objector intends

7

to appear personally at the Final Approval Hearing, the objector must include with the objection a notice of the objector's intent to appear at the hearing.

21. Objections, along with any notices of intent to appear, must be filed no later than forty-five (45) days from the Notice Date. If counsel is appearing on behalf of more than one Class Member, counsel must identify each such Class Member and each Class Member must have complied with the requirements of this Order. These documents must be filed with the Clerk of the Court at the following address:

> Clerk of the Court
> Superior Court of New Jersey
> Law Division-Civil Part
> Salem County Courthouse
> 92 Market Street
> Salem, New Jersey 08079

22. Objections, along with any notices of intent to appear, must also be mailed to Class Counsel and counsel for Defendant at the address listed below:

> Class Counsel:
> Stephen Barry, Esquire
> Barry, Corrado- & Grassi P.C.
> 2700 Pacific Avenue
> Wildwood, NJ 08260
>
> Defendant's Counsel:
> Matthew Polaha, Esquire
> Brian H. Leinhauser, Esquire
> MacMain, Connell & Leinhauser, LLC
> 433 W. Market Street, Suite 200
> West Chester, PA 19382

8

PA001706

23. Only Class Members who have filed and served valid and timely
    notices of objection shall be entitled to be heard at the
    Final Approval Hearing. Any Class Member who does not timely
    file and serve an objection in writing to the Settlement,
    entry of Final Judgment, or to Class Counsel's application
    for fees, costs, and expenses, in accordance with the
    procedure set forth in the Class Notice and mandated in this
    Order, shall be deemed to have waived any such objection by
    appeal, collateral attack, or otherwise.

24. Persons wishing to be heard at the Final Approval Hearing
    are required to file written comments or objections and
    indicate in their written comments or objections their
    intention to appear at the Final Approval Hearing. Class
    Members need not appear at the hearing or take any other
    action to indicate their approval.

25. All Class Members who do not personally and timely request
    to be excluded from the Class are enjoined from proceeding
    against the Defendants for the claims made in the
    Complaint.

*Other Provisions*

26. Upon approval of the settlement provided for in this
    Settlement Agreement, each and every time period and

9

provision thereof shall be deemed incorporated herein as if
expressly set forth and shall have the full force and
effect of an Order of this Court.

27. All reasonable costs incurred in notifying Class Members,
as well as administering the Settlement Agreement, shall be
paid as set forth in the Settlement Agreement.

IT IS FURTHER ORDERED that a true and exact copy of this
Order shall be served on all parties via eCourts electronic
system.

*Benjamin D. Morgan*

( x ) Opposed                    Honorable Benjamin D. Morgan, J.S.C.
(   ) Unopposed

Reasons set forth in attached written opinion.

PA001708

SLM-92-17

**Case Caption: Dana Clark Stevenson, Mark Hendricks, Kenneth Fuqua and Darius Snead v. The County of Salem**

**Docket No.:**   SLM-92-17

**Date:**   March 25, 2022

**Re:**   Plaintiff's Motion to Approve Preliminary Settlement of Class Action

## MOTION DECISION

### BRIEF FACTUAL BACKGROUND

This is a motion filed by two of the three Plaintiff's counsel to approve a preliminary settlement of the class action. Plaintiffs allege in their class action lawsuit that the Salem County Correctional Facility subjected them to strip searches in violation of certain state constitutional protections. On March 12, 2020, this court entered an Order certifying four sub-classes:

> Class 1A – Non-indictable detainees classified as at-risk who were strip-searched based on their identification as at-risk inmates and absent reasonable suspicion in violation of N.J.S.A. 2A:161A-1(c)
>
> Class 2 – Detainees admitted to the at-risk unit and strip-searched 2-3 times per day despite being in a 24/7 lock-down unit
>
> Class 3 – Detainees who were strip searched in view of others in a group strip search; and
>
> Class 4 – Detainees who were strip searched in their cells in the at-risk unit while being videotaped and observed by a person not authorized to view the search.

Fact discovery has proceeded in this matter. On November 24, 2020, counsel for the defense, Brian Leinhauser, Esq. and Samantha Ryan, Esq., and two of the counsel for the classes, Carl Poplar, Esq. and Stephen Barry, Esq., conducted negotiations via mediation with the Hon. Joel B. Rosen, U.S.M.J. (ret.). The third class counsel, William Riback, Esq., was not available for a period of time, including the mediation date, as a result of health issues. All counsel and the

1

PA001709

mediator arrived at a mediated settlement that was memorialized and executed by all counsel, including Mr. Riback.

A Master Settlement Agreement more fully outlining the terms of the settlement was also signed by all counsel. This settlement agreement effectively decertifies Class 2 and Class 4, and makes claimants in Class 1 eligible to receive a $75 award and claimants in Class 3 to receive a $300 award. The class representatives would receive an incentive reward of $7,500. The class size of the remaining classes are approximately 4,500 and 6,500 respectively. Attorneys fees can be awarded in an amount not to exceed $375,000 and members may object or opt out of the settlement by writing to the administrator.

After submitting the preliminary approval motion to the Court, Mr. Riback, Plaintiff's third class counsel, submitted certain objections to the settlement. The context of this matter has been rather muddled because (1) there is now a divergence of opinion between Plaintiff's three class counsel with Mr. Poplar and Mr. Barry seeking approval and Mr. Riback opposing it, and (2) Mr. Riback had previously executed his agreement twice with the settlement proposal but is now presenting objections to that same proposal. Defendant's counsel also agrees the settlement should be preliminarily approved. The court has held several conferences with counsel and oral argument on December 17, 2021 to discuss the positions of counsel and how this case can proceed.

## STANDARD OF REVIEW

Before this court is a motion for preliminary approval of a class action settlement agreement. Rule 4:32(e)(1)(C) provides that "[t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, or compromise is fair reasonable and adequate." "There is only limited discussion in New Jersey case law of the procedures to be followed in presenting

2

proposed settlements of class actions for judicial approval and of the standards to be applied in determining whether approval should be given." Morris County Fair Housing Council v. Boonton Township, 197 N.J. Super. 359, 369 (Law Div. 1984). "Therefore it is appropriate to seek guidance in federal case law in determining the procedures and standards for approval of settlements of representative actions." Id.

"There is a set of well-established procedures which govern the approval of proposed settlements of class action in the federal courts." Id. First, the court must make a preliminary determination that the proposed settlement has sufficient apparent merit to justify scheduling a hearing to review its terms. This is the stage at which we are presently, however, a review of the remaining steps is relevant to the court's decision. The second step requires formal notice approved by the court be given to all members of the class and other who may have an interest in the settlement. Third, sufficient time must be allowed to class members and other interested parties to prepare documentary material and/or oral testimony in opposition to the proposed settlement. Fourth, a hearing must be held. Fifth, the court must reach a conclusion, based upon adequate findings of fact, that the settlement is "fair and reasonable" to the members of the class. Id.; see also Manual for Complex Litigation (Fourth) ("MCL"), sec. 21.632 (2004) (requiring parties to submit settlement to the court for a "preliminary fairness evaluation" before notice is given to the class).

At the preliminary approval stage, the bar to meet the "fair, reasonable and adequate" standard is lowered and "the court is required to determine whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." In re NFL Players'

PA001711

Concussion Injury Litigation, 961 F. Supp 2d 708, 714 (E.D. Pa. 2014) (internal quotations omitted). To determine whether a settlement "'falls within the range of possible approval', a court must 'consider plaintiffs' expected recovery balances against the value of the settlement offer.'" Id. (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). The United States Third Circuit Court of Appeals has also stated that "an initial presumption of fairness [exists] when the court finds that (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." Id. (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55. F.3d 768, 785-86 (3d Cir. 1995). This examination is made on the basis of information already known and supplemented by briefs, motions or information presentations by the parties. Id. (citing MCL, at sec. 21.632). Indeed, the purpose of this review is to detect defects in the settlement that would risk making notice to the class with its attendant expenses and the subsequent hearing a futile gesture. Id.

This review is also not just a rubber stamp of the parties' agreement. Id. (citing In re Inter-Op. Hip Prosthesis Liab. Litig., 204 F.R.D. 330, 338 (N.D. Ohio 2001)). This review must be thorough because the adversariness of litigation is often lost after an agreement to settle is made. Id. Moreover, while the issue of a final settlement approval is not presently before the court, the court must also consider those factors it would consider on final approval. Those factors come from the United States Third Circuit's opinion in Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975). See Strougo v. Ocean Shore Holding Co., 457 N.J. Super. 138, 159 (Ch. Div. 2017) ("Because the Girsh factors are reinforced by a substantial amount of case law in the Third Circuit and elsewhere, this court is persuaded to formally adopt these factors in New Jersey when conducting an analysis

4

to determine the approval of a class action settlement pursuant to R. 4:32-2(e)"). These factors include:

> (1) The complexity, expense and likely duration of the litigation;
>
> (2) The reaction of the class to the settlement;
>
> (3) The stage of the proceedings and the amount of discovery completed;
>
> (4) The risks of establishing liability;
>
> (5) The risks of establishing damages;
>
> (6) The risks of maintaining the class action through trial;
>
> (7) The ability of the defendants to withstand a greater judgment;
>
> (8) The range of reasonableness of the settlement fund in light of the best possible recovery; and
>
> (9) The range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Girsch, 521 F.2d at 157. While not a full analysis, a cursory review of these factors will allow a court to identify any potential issues that could impede the offer's completion at the final approval stage.

<u>**ANALYSIS OF PRELIMINARY SETTLEMENT APPROVAL**</u>

In keeping these standards in mind, the Court finds that these factors weigh in favor of granting preliminary approval of the parties' settlement agreement. The classes have already been certified by the court on March 12, 2020. Thus, the only issue is whether preliminary approval should be granted.

As a threshold matter, the Court finds that an initial presumption of fairness exists because (1) the negotiations occurred at arm's length under the guidance of Judge Rosen in mediation; (2)

5

PA001713

Case 1:22-cv-02138-RBK-EAP Document 1 Filed 04/13/22 Page 66 of 72 PageID: 66
SLM-E-000092-17 03/23/2022 Pg 16 of 22 Trans ID: LCV20221235117

SLM-92-17

both parties agree that extensive fact discovery has already been completed; (3) the proponents of the settlement, i.e. Plaintiff's two counsel and Defendant's counsel, are all experienced in similar litigation, having litigated similar issues in different dockets; and (4) to date, only a small portion of the class has objected.[1] See Gen. Motors, 55 F.3d at 785-86. To determine whether this settlement falls "within the range of possible approval," the Court will look to the Girsh factors for guidance.

The first factor is the "complexity, expense and likely duration of the litigation." The objectors claim the case is near ready for trial and there is little factual complexity to the claims and minimal expense in completing expert discovery and filing motions for summary judgment. The proponents for settlement disagree, arguing that there is substantial factual complexity among the four classes of plaintiffs, that the matter has already taken years to pursue, and that these exact concerns were factors in coming to this settlement so that those costs could be avoided. In reviewing the arguments of counsel, the court finds this factor weighs in favor of preliminary approval. With years of discovery to review, spread amongst four separate sub-classes of plaintiffs, the court does not anticipate expert discovery to be the minimal expense the objectors claim it will be. Nor does the court find that summary judgment on this matter will be of little cost or complexity given the vast array of facts to consider through the discovery. Given the complexity of the sub-classes and different levels of liability for each class, the trial in this class action also will likely not take the "days" the objectors claim, but will likely be weeks long to address all the information required for each class of plaintiff. As such, the court finds this factor weighs in favor of preliminary approval.

---

[1] This last prong, however, is less persuasive since notice of the settlement has not yet been extended to the full set of class members.

6

PA001714

The second factor is the "reaction of the class to the settlement." The reaction of the class "is perhaps the most important factor to be weighed in considering its adequacy." Struogo, 457 N.J. Super. at 160. At this point, however, notice of the settlement has not circulated to the entire class membership. Therefore, the Court cannot assess how the class as a whole will react to the settlement terms. The Court does take note that two members of the class claim to have presented objections (Mr. Snead and Mr. Hendricks). In Mr. Snead's certification, he claims to have never been explained the terms of the settlement agreement. The proponent's counsel at oral argument rather claimed to have explained the settlement terms to the clients and received their approval. The certification provided is a combination of preprinted text along with handwritten additions. It is unclear to the court what Mr. Snead's actual position is given this conflicting information. The court also does not have an objection made by the other two class representatives, thus the objections are currently equally divided. Regardless, without more members being aware of the proposed settlement agreement, the court finds this factor does not weigh one way or the other in terms of approval.

The third factor is "the stage of the proceedings and the amount of discovery completed." Both sides agree this matter has progressed significantly, extensive fact discovery has been completed, and expert discovery is ready to proceed. Indeed, the main consideration is whether the parties conducted an adequate investigation and discovery to gain an appreciation and understanding of the relative strengths and weaknesses of the claims and defenses asserted before reaching a settlement. Struogo, 457 N.J. Super. at 160. As such, the court finds this factor weighs in favor of preliminary approval.

The fourth, fifth and sixth factors under Girsh are the risks in establishing liability, damages and maintaining the class action through trial and can be analyzed as a group. As for liability,

7

PA001715

courts should "give credence to the estimation of the probability of success proffered by . . .
counsel, who are experienced with the underlying case, and the possible defenses which may be
raised to their causes of action." Lachance v. Harrington, 965 F. Supp. 630, 638 (E.D. Pa. 1997).
The objectors' claim that the application of the statute should generate a ruling in each subclasses
favor and that there are minimal risks to proving liability in this case. The objectors also point to
an expert report related to Salem County's "suicide screen." What this analysis does not contain
is a review of the actual physical evidence Plaintiffs could provide at the time of trial. The
proponents of the settlement argued before this court that after having reviewed the footage of
their clients that there were significant concerns about proving liability for all four sub-classes.
Moreover, this settlement was not the product of an informal discussion, but of a lengthy mediation
process before Judge Rosen who assisted the parties to come to this resolution. Certainly, Judge
Rosen was presented with the evidential risks to liability during the mediation, which both
Defendant's counsel and Plaintiff's counsel agreed resulted in the settlement agreement sought to
be approved. In giving credence to that background, the court finds that the risks of liability weigh
in favor of preliminary approval of the settlement.[2]

In terms of the risk of establishing damages, the court also finds this factor weighs in favor
of preliminary approval. Counsel for the objectors argues that awards in other strip search cases
fall more in line with $1000 per member rather than only the $75 proposed in this case. However,
counsel also concedes in his briefing "[t]his settlement compared to a trial is difficult to assess.
What a jury would return on damages is unknown and the sample size of other cases does not

---

[2] The Court notes objectors' argument that the members in classes 2 and 4 have no "downside" in capsizing the
settlement agreement because they are not receiving any award in the settlement regardless. While this may be true,
that does not necessarily mean their risk as to liability is any different. Indeed, this lack of award agreed to by
counsel on both sides and by Judge Rosen is further indicative of how little evidence existed to support the case of
those two classes.

permit an educated guess." Thus, what happened in other cases is arguably of no relevance to this particular case. Moreover, it is likely that even if liability were proven, damages would still need to be proven through dueling expert testimony, which could return a low damages number or no damages at all. The parties understood that risk when negotiating the settlement, which would provide at least some tangible and immediate benefit to the proposed classes. As such, the court finds that this factor also weighs in favor of preliminary approval.

As for the sixth factor of whether the class can be maintained as a class action through trial, there is no dispute from the parties that this can occur. Courts have found this factor is of "negligible importance" in deciding whether to approve a class action settlement. Struogo, 457 N.J. Super. at 162 (citing Weber v. Gov't Employees Ins. Co., 262 F.R.D. 431, 446 (D.N.J. 2009)). As such, the fact that the class can be maintained has minimal weight.

The seventh factor is the "ability of the defendants to withstand a greater judgment." Objectors argue that Defendant has a large insurance policy of $10,000,000 and can withstand a larger judgment that what is proposed in the settlement. Objectors are correct that if a defendant can withstand a judgment for significantly more than the settlement amount, that weighs against approval. In re Cendent Corp. Litig., 264 F.3d 201, 240-41 (3d Cir 2001). Defendant and the proponents of the settlement do not appear to address this factor, which may lean in favor of denying preliminary approval.

The eight and ninth factors look at the range of reasonableness of the settlement fund in light of the best possible recovery and in light of the attendant risks of litigation.

> The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial. In order to assess the reasonableness of a settlement in cases seeking primarily monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not

9

prevailing, should be compared with the amount of the proposed settlement.

In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 538 (3d Cir. 2004).

Here, the settlement provides Class 1 members (approx. 4,500 people) will be entitled to receive $75.00 and Class 3 members (appox. 6,500 people) will be entitled to receive $300.00. If all members collect, that will come to $2,287,500, plus attorneys' fees not to exceed $375,000. This settlement does not include a payout for Classes 2 and 4.

Objectors argue that this settlement is not within a reasonable range given their best possible recovery and in light of the risks of litigation. Objectors refer to ten strip search cases in New Jersey that have purportedly settled with their class members for between $300 and $1000 per member. Objectors claims a nationwide review places the normal settlement at $1000 per member and that the $75 settlement is a significant settlement discount outside of reason. Objectors also refer to two strip search cases that had gone to trial in Nassau County, New York and Jefferson County, Kentucky, where the Nassau County class members were awarded $500 per member and the Jefferson County members were awarded between $1000 and $2000 per member. Objectors contend that based on these other cases, the current settlement is not reasonable.

At this preliminary stage, the Court disagrees and finds the settlement could be found reasonable under the circumstances. First, New Jersey's federal courts have found in unpublished decisions that a settlement could still be appropriate even where the settlement is only a fraction of the ultimate total exposure should be the case be decided at trial, even at 15% of the possible exposure. This settlement falls within that same range. Second, the objectors' view of their possible recovery does not appear to comport with the reality of the situation. Objectors believe that all four classes should be able to obtain a recovery at trial. If we were to take only the two classes that remain in the settlement (Class 1 and Class 3) and assume that each member is entitled

10

to a $1000 award as objectors contend, that grouping alone comes to an $11,000,000 award – which is a million dollars above the purported limit of Defendant's insurance coverage.

*[(4,500 class 1 members \* $1000) + (6,500 class 3 members \* $1000) = $11,000,000]*

Third, counsel has not provided any basis from which this court can find the 10 settled New Jersey cases are the same factually as the instant matter. Notably, the objectors admit that at least one of those cases did settle for $300 per claimant which is the same as at least one of the classes in this case. So that number cannot be found outside the bounds of reason. And lastly, the objectors' analysis fails to discount their recovery by the risks of continuing the litigation, focusing only on the possible recovery amount.

Because the Court finds the settlement amount fashioned by Judge Rosen at the parties' mediation is within the range of a reasonable recovery in light of their best and worst case scenarios, the court finds these factors also lean in favor of preliminary approval.

**CONCLUSION**

For the reasons set forth above, the Court finds as a preliminary determination that the proposed settlement has sufficient apparent merit to justify the scheduling of a hearing to review its terms. Formal notice shall be given to all members of the classes and others who may have an interest in the settlement as set forth in counsel's proposed notices. The Court notes that objectors' counsel contends that the notices are deficient, but at the same time states the notices are almost identical to notices previously sent out in a different case, which has not been appealed or shown to be incorrect. Thus, objectors' notice arguments do not sway the court from issuing this preliminary approval. If it appears that notice has been deficient, that issue can be addressed at the final approval hearing. The court will also note that this preliminary approval is not binding and is still subject to a final approval. That final approval hearing will be scheduled

11

PA001719

SLM-92-17

for a date this Fall, at which time the court shall hear the positions of the parties and objections of class members and will make a final determination as to whether the settlement is "fair and reasonable" to the members of the class.

Plaintiff's motion for preliminary approval of the settlement is GRANTED.

Counsel has also requested guidance concerning the apparent divide between Plaintiff's three class counsel, Messrs. Barry, Poplar and Riback. The attorneys appear to have different perspectives on how the Plaintiffs' claims should be pursued on behalf of the classes, with Messrs. Barry and Popular on the side of the proponents for settlement and Mr. Riback on the side of the objectors.

Rule 4:32-2(g)(1)(B) states that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class." The Rule goes on to state that "[t]he court also may consider any other matter pertinent to counsel's ability to represent fairly and adequately the interest of the class and may direct potential class counsel to provide information on any subject pertinent to the appointment . . . ." and that "[t]he court may make further orders in connection with the appointment." R. 4:32-2(g)(1)(C).

Here, the court previously appointed all three counsel as class counsel. To the extent any of the current counsel wish to change the terms of that appointment, they must move to do so on the basis that the individual or individuals appointed are no longer fairly and adequately representing the interests of the class. Absent such briefing, the court is reticent to make a determination on that issue at this point in time.

12

PA001720